UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BECKY A. MATTHEWS PEASE, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| | CLASS ACTION |
| Plaintiff, | COMPLAINT |
| v. | |
| JACKSON NATIONAL LIFE INSURANCE COMPANY, | |
| Defendant. | |

_____/

INTRODUCTION

1. This case is about self-dealing and imprudent investment of retirement plan assets. The Jackson National Life Insurance Company Defined Contribution Retirement Plan (the "Plan") is sponsored by Defendant Jackson National Life Insurance Company ("Jackson National"). The Plan covers substantially all employees of Jackson National. As a fiduciary for the Plan, Jackson National is required by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*., to act prudently and *solely* in the interest of the Plan when selecting investment products for the Plan. Jackson National, however, did not do so. Instead, Jackson National put its financial interests ahead of the Plan's interests by selecting high-cost proprietary investment products offered and managed by Jackson National and its affiliates on the Plan's menu of investment options. This allowed Jackson National to maximize company profits at the expense of the Plan by collecting for itself millions of dollars in fees, an amount that greatly exceeds what the Plan would have paid for comparable low-cost non-

proprietary investment products that are not offered by Jackson National to the Plan. By acting for its own benefit rather than solely in the interest of the Plan, and failing to adequately consider the use of non-proprietary products and other low-cost options available to the Plan, Jackson National breached its fiduciary duties of loyalty and prudence, and engaged in transactions expressly prohibited by ERISA.

2.  To remedy these fiduciary breaches, Plaintiff Becky A. Matthews Pease ("Plaintiff"), individually and as a representative of a class of similarly situated persons, brings this action on behalf of the Plan under 29 U.S.C. §§1132(a)(2) and (3) to enforce Jackson National's personal liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty and to restore to the Plan any profits made through Jackson National's imprudent use of the Plan's assets. In addition, Plaintiffs seek such other equitable or remedial relief for the Plan as the Court may deem appropriate.

## JURISDICTION AND VENUE

3.  This Court has federal question subject matter jurisdiction under 28 U.S.C § 1331 because this is an action under 29 U.S.C. §1332(a)(2) and (3), for which federal district courts have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

4.  Venue is proper in this District under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. §§ 1391(b), which provides that in an action bringing claims for violation of ERISA venue is proper in the district where the plan is administered or where a defendant resides or may be found. The Plan is administered in this district. Defendant resides and may be found in this district.

## PARTIES

5.  Plaintiff is a resident of Lansing, Michigan. She is an employee of Jackson National and participant with a current account balance in the Plan. Plaintiff's Plan account has

invested in the following Jackson National proprietary funds (collectively referred to hereinafter as the "Jackson National Funds"):

- JNL/S&P Managed Conservative Growth Fund;
- JNL/S&P Managed Moderate Growth Fund;
- JNL/S&P Managed Aggressive Growth Fund;
- JNL/TRowe Price Established Growth Fund;
- JNL Mellon S&P 500 Fund;
- JNL/TRowe Price Mid-Cap Growth Fund;
- JNL/Goldman Sachs Mid Cap Value Fund;
- JNL/WMC Money Market Fund;
- JNL/Mellon International Fund;
- JNL PPM America High Yield Bond Fund;
- JNL/PIMCO Total Return Bond Fund;
- JNL Associate Annuity;

6.  Defendant Jackson National is the sponsor of the Plan and thus is a "named fiduciary" under 29 U.S.C. §1102(a)(1), who has authority under the written Plan documents to control and manage the administration of the Plan. Defendant also possesses or exercises certain types of authority, responsibility, or control over the Plan and thus is a functional fiduciary under 29 U.S.C. §1002(21)(A). Defendant is also party in interest to the Plan under 29 U.S.C. §1002(14).

## NATURE OF THE ACTION

7.  The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined contribution plan within the meaning of ERISA §

3(34), 29 U.S.C. § 1002(34). Pursuant to ERISA, the relief requested in this action is for the benefit of the Plan.

8. Defendant is responsible for selecting Plan investment options and service-providers.

9. The Plan has invested, pursuant to the direction of the Defendant, ***billions*** of dollars in Jackson National proprietary funds, which investments have generated ***millions*** of dollars of investment advisory and other fees for Defendant. During the Class Period, the Plan's investment in Jackson National proprietary funds averaged more than ***$500 million*** a year.

10. Defendant knew or should have known by virtue of its standing as a large financial services company that better performing, lower cost, comparable investment funds are available from unaffiliated entities. Each one of Defendant's proprietary funds charged higher fees than comparable to funds offered by unaffiliated fund families.

11. The Plan's investments in Jackson National proprietary funds resulted in ***millions*** of dollars of losses to the Plan. In 2014, Defendant offered Plan participants the ability to invest in 21 funds; 18 of the 21 funds were Jackson National proprietary funds whereby Defendant collected large fees from participants who invested in these funds. Worse yet, the overwhelming majority of the proprietary funds available to Plan participants were virtually identical to funds offered by unaffiliated financial institutions at a fraction of the cost. Instead of doing what was best for Plan participants and offering the low cost funds, however, Defendant limited funds available to Plan participants to primarily proprietary funds, and charged Plan participants high fees for investing in those funds. That is, Defendant used leverage created by Plan assets to force those Plan assets into high cost, poorly performing proprietary funds enabling Defendant to collect fees that should not have been paid by Plan participants. This type of behavior is a rank

violation of ERISA.

12.     By way of illustration, in 2014 the Plan had total investments of $608,784,892. Of this amount, 89% (or approximately, $541,691,294) was invested in high cost and poorly performing Jackson National proprietary funds. In 2015, the Plan had total investments of $664,718,525. Of this amount, 76% (or approximately $507,226,080) was invested in high cost and poorly performing Jackson National proprietary funds. For virtually all of these Jackson National proprietary funds, Morningstar reports the fees are above average and the performance significantly lags behind appropriate benchmarks. Defendants only offer these investment options to Plan participants because Defendant gets paid fees when participants invest in the funds.

13.     It is not just Morningstar. By way of further illustration, on October 10, 2016, Defendant provided Plan participants with disclosures and information about Plan performance as required by the Department of Labor. *See* Required Disclosure Information, Jackson National Life Insurance Company Defined Contribution Plan, dated October 10, 2016, attached hereto as Exhibit 1. These disclosures show Defendant's proprietary funds were far more expensive and underperformed their benchmarks. By way of example, Defendant's disclosure states the S&P 500 is the benchmark for its proprietary JNL/S&P Managed Aggressive Growth Fund. The disclosures further state that the JNL/S&P Managed Aggressive Growth Fund had a one year annual total return of -.23% while the S&P 500 returned 1.38% over the same time period. Hence, over a one year period the S&P 500 outperformed the JNL/S&P Managed Aggressive Growth Fund (which lost money) by a wide margin. Defendant's disclosure further state that the JNL/S&P Managed Aggressive Growth Fund had a five year annual total return of 8.08% while the S&P 500 returned 12.57% over the same time period. Hence, the JNL/S&P Managed

Aggressive Growth Fund lagged behind its benchmark by nearly 50% over a five year period. This example is illustrative and not exhaustive. Defendants' proprietary funds lagged behind their respective benchmarks.

14. One of the primary reasons Defendant's proprietary funds performed so poorly is because of the high cost of the funds and specifically the fees collected by Defendant from participants who invest in these funds. For example, the annual gross expense ratio for the JNL/S&P Managed Aggressive Growth Fund is 110 basis points. Unaffiliated entities like Vanguard, Fidelity, Blackrock, Schwab, and State Street offer virtually identical benchmark S&P 500 funds with annual expense ratios of less than ten basis points. Accordingly, Defendant's JNL/S&P Managed Aggressive Growth Fund was more than ten times more expensive than virtually identical benchmark funds offered by unaffiliated entities.

15. Plan participants pay a heavy price by being forced to invest in poorly performing, high-cost Jackson National proprietary funds, and the outsized fees Plan participants pay to Defendant for investing in its proprietary funds has a direct and substantial negative effect on investment returns. By way of example, a participant who had invested in an S&P 500 index fund with an annual expense ratio of ten basis points for the past five years would have an account balance that was at least 23% greater than the participant who invested in the JNL Aggressive Growth Fund.

16. In addition, Defendant also have exposed Plan participants to poorly performing and high cost proprietary funds through the Plan's default investment fund.

17. By way of background, new employees become eligible to participate in the Plan shortly after they commence employment. Employees who enroll in the Plan and fail to make an investment election automatically have their monies automatically invested in the designated

default investment fund, which is selected by Defendant. Defendant has selected the JNL/S&P Managed Growth Fund as the designated default option.

18.     Defendant's disclosures state the benchmark for the JNL/S&P Managed Growth Fund is the S&P 500. *See* Exhibit 1 at B9 and B10. The disclosures show that over a one year period the JNL/S&P Managed Growth Fund had an average annual total return of -20%, while over the same period the S&P 500 had an average annual return of 1.38%. Additionally, over a five year period the JNL/S&P Managed Growth Fund had an average return of 7.62%, while its benchmark the S&P 500 had an annual return of 12.57%. Hence, once again, Defendant has imprudently selected a proprietary fund that lags well behind its benchmark as the Plan's designated default investment option. Defendant has done so because it reaps a windfall in fees from Plan participants who invest in the JNL/S&P Managed Growth Fund. The annual gross expense ratio for the JNL/S&P Managed Growth Fund is 108 basis points. Benchmark funds offered by unaffiliated entities have annual expense ratios of less than 10 basis points.

19.     ERISA imposes strict duties of loyalty and prudence upon plan fiduciaries. 29 U.S.C. § 1104(a)(1). These fiduciary duties are "the highest known to law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (quotation omitted). Fiduciaries must act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

20.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the Fiduciary Defendants as fiduciaries of the Plan. 29 U.S.C. § 1104(a)(1) states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
>     (A) For the exclusive purpose of
>
>         (i) Providing benefits to participants and their beneficiaries; and
>
>         (ii) Defraying reasonable expenses of administering the plan;

(B) With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

21. The duty of loyalty requires fiduciaries to act with an "eye single" to the interests of plan participants. *Pegram v. Herdich,* 530 U.S. 211, 235 (2000). "Perhaps the most fundamental duty of a [fiduciary] is that he must display . . . **complete loyalty** to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Id.* at 224 (emphasis added, quotation marks and citations omitted). Thus, "in deciding whether and to what extent to invest in a particular investment, a fiduciary must ordinarily consider *only* factors relating to the interests of plan participants and beneficiaries . . . . A decision to make an investment may not be influenced by [other] factors unless the investment, when judged solely on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan." Dep't of Labor ERISA Adv. Op. 88-16A (Dec. 19, 1988) (emphasis added).

22. ERISA also "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014) (quotation omitted). This duty includes, but is not limited to, a duty to select prudent investments. Under ERISA, a fiduciary "has a continuing duty to monitor [plan] investments and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015). If an investment is imprudent, the plan fiduciary "must dispose of it within a reasonable time." Id. (quotation omitted). Therefore, "a fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other funds" available within the plan could have "theoretically . . . create[d] a prudent portfolio." *DiFelice v. U.S. Airways, Inc.*,

497 F.3d 410, 423 (4th Cir. 2007) (cited with approval in *Tibble v. Edison Int'l*, 729 F.3d 1110, 1122 (9th Cir. 2013), rev'd on other grounds, 135 S. Ct. 1823 (2015)).

23. Failing to closely monitor and subsequently minimize administrative expenses wherever possible by surveying the competitive landscape and leveraging the plan's size to reduce fees constitutes a breach of fiduciary duty. *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014). Similarly, selecting higher cost investments because they benefit a party in interest constitutes a breach of fiduciary duties when similar or identical lower-cost investments are available. *Braden v. Wal-Mart Stores*, 588 F.3d 585, 596 (8th Cir. 2009); *Tibble v. Edison Int'l*, 729 F.3d at 1137–39.

24. In considering whether a fiduciary has breached the duties of prudence and loyalty, courts consider both the "merits of the transaction" as well as "the thoroughness of the investigation into the merits of the transaction." *Howard*, 100 F.3d at 1488 (quotation and citation marks omitted). Mere "subjective good faith" in executing these duties is not a defense; "a pure heart and an empty head are not enough." *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983).

25. In addition to a core menu of investment options, many plans (including the Plan at issue here) also provide employees the option of opening a self-directed brokerage account ("SDBA"), giving them access to a broad array of stocks, bonds, and mutual funds. Ayres & Curtis, Beyond Diversification at 1524; Ex. A § 5.02(c). However, SDBAs have significant drawbacks. Participants that choose to utilize an SDBA are typically assessed an account fee and a fee for each trade. These fees often make an SDBA a much more expensive option compared to investing in the core options available within the Plan. Costs are also higher because employees investing in mutual funds within an SDBA must invest in retail mutual funds, rather than the

lower-cost institutional shares typically available as core investment options within the plan that are only available because of the retirement plan's ability to leverage the negotiating power of the plan's assets. DOL Field Assistance Bulletin 2012-02R, July 30, 2012, available at http://www.dol.gov/ebsa/regs/fab2012-2R.html; Christopher Carosa, CTFA, Is the Fiduciary Liability of Self-Directed Brokerage Options Too Great for 401k Plan Sponsors?, Fiduciary News (June 11, 2013), available at http://fiduciarynews.com/2013/06/is-the-fiduciary-liability-of-self-directedbrokerage-options-too-great-for-401k-plan-sponsors/ (last accessed March 14, 2017). As a result, SDBAs are seldom used; only 2% of retirement plan assets are held in SDBAs. Investment Company Institute & Deloitte Consulting LLP, Inside the Structure of Defined Contribution/401(k) Plan Fees, 2013, at 15 (Aug. 2014), available at https://www.ici.org/pdf/rpt_14_dc_401k_fee_study.pdf (hereinafter "ICI/Deloitte Study").

26. The existence of an SDBA option does not excuse plan fiduciaries from selecting a prudent and appropriate set of core investment options. For the reasons described above, "the performance is generally lower with self-directed accounts compared to managed portfolios. This translates into low real rates of return and higher retirement failure rates." Marijoyce Ryan, CPP, Money Management: The Downside of Self-Directed Brokerage Accounts, The Daily Record (June 26, 2012), available at http://nydailyrecord.com/blog/2012/06/26/money-management-the-downside-ofself-directed-brokerage-accounts/ (last accessed March 14, 2017); Dr. Gregory Kasten, Self-Directed Brokerage Accounts Reduce Success (2004), at 1, 13–14, available at http://etf.wi.gov/boards/agenda_items_2004/dc20040819item4.pdf.

27. Plaintiff was not aware that the Jackson National proprietary funds charged high fees and delivered poor performance compared to unaffiliated funds until shortly before she filed this Complaint. She did not know that the Plan's fiduciaries had put Jackson National's business

ahead of the Plan's interest in prudent, reasonably-priced investment products. Plaintiff did not know that by causing the Plan to invest in proprietary funds, the Plan's fiduciaries caused the Plan to give up ERISA rights and remedies against the fund managers.

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action on behalf of the Plan and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

29. Plaintiff seeks to certify, and to be appointed as representative of, the following class ("Class"):

> All participants and beneficiaries of the Plan whose Plan accounts had a balance in any of the Jackson National Funds at any time on or after March 29, 2011. Excluded from the Class are Defendant, its directors, and any employees with responsibility for the Pan's investment or administrative functions.

30. This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

  a. <u>Numerosity</u>: The Class is so numerous that joinder of all its members is impracticable. The Plan had more than 5,000 participants during the applicable statutory period.

  b. <u>Typicality</u>: Plaintiff's claims are typical of the Class members' claims. Like other Class members, Plaintiffs are current or former participants in the Plan, who have suffered injuries as a result of Defendant's mismanagement of the Plan and self-dealing. Defendant treated Plaintiff consistently with other Class members with regard to the Plan. Defendant managed the Plan as a single entity, and therefore Defendant's imprudent decisions and self-dealing affected all Plan participants similarly.

  c. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class, as her interests are aligned with the Class that she seeks to represent and Plaintiff has

retained counsel experienced in complex class action litigation. Plaintiff does not have any conflict of interest with any Class members that would impair or impede her ability to represent such Class members.

    d.  <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

     i. Whether Defendant breached its duties of prudence and loyalty by offering high-cost proprietary investments within the Plan;

     ii. Whether Defendant breached its duties of prudence and loyalty by failing to monitor and remove the Plan's investments in high-cost proprietary investments managed by Defendants and its affiliates;

     iii. Whether Defendant failed to exercise appropriate skill, care, loyalty, and diligence, by failing to investigate and attempt to negotiate lower-cost alternatives to the high cost proprietary investments within the Plan from investments managers who were not affiliated with the Jackson National family;

     iv. The proper measure of monetary relief; and

     v. The proper form of equitable and injunctive relief.

  31.  Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendant would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class. Separate lawsuits would establish incompatible standards to govern Defendant's conduct.

32. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Plan participants, as a practical matter, would be dispositive of the interests of other Plan participants or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court such as removal of particular Plan investments or removal of a Plan fiduciary would be dispositive of non-party participants' interests. The accounting and restoration of the property of the Plan that would be required under 29 U.S.C. §§ 1109 and 1132 would be similarly dispositive of the interests of other Plan participants.

33. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint has applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendants by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

COUNT I
Breach of Duties of Loyalty and Prudence
29 U.S. § 1104(a)(1)(A)-(B)

34. Plaintiff repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

35. 29 U.S.C. § 1104 imposes fiduciary duties of prudence and loyalty on Defendant in their administration of the Plan and in their selection and monitoring of Plan investments. At all relevant times, the Benefit Committee and its members acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising authority and control with respect to the management of the Plan and the Plan's assets.

36. As described throughout this Complaint, the Defendant breached its fiduciary duties of prudence and loyalty with respect to the selection and management of the Plan's investment options by, their actions and omissions, in authorizing or causing the Plan to invest in Jackson National Funds and purchase products and services from Jackson National affiliates, and to pay investment management and other fees in connection therewith, to Jackson National affiliates, put Jackson National's financial interests ahead of the Plan's interests. Thus, the Defendant breached its duties of prudence and loyalty to the Plan under ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

37. As a direct and proximate result of these breaches of duty, the Plan, and indirectly Plaintiff and the Plan's other participants and beneficiaries, lost millions of dollars to Jackson National fees and inferior returns on their retirement savings.

38. Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), the Defendant is liable to restore all losses suffered by the Plan caused by its breach of fiduciary duties.

COUNT II
Anti-Inurement Provision
29 U.S.C. § 1103

39. Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

40. Defendant is an employer of participants of the Plan as defined by 29 U.S.C. § 1002(5).

41. 29 U.S.C. § 1103(c)(1) provides that the assets of an employee benefit plan "shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries."

42. The purpose of this provision "is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others." Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 23 (2004).

43. Plan assets improperly inured to the benefit of the Defendant as a result of the Plan's investments in Jackson National Family mutual funds and the subsequent assessment of investment management expenses against the accounts of Plan participants.

44. Pursuant to 29 U.S.C. § 1132(a)(3), the Defendant should be required to disgorge all Plan assets that have inured to them as a result of its self-dealing. These assets should be restored to the Plan under principles of equitable restitution.

45. Plaintiffs also seek any other equitable relief the Court deems appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan; removal of proprietary investments from the Plan's core investment options; transfer of Plan assets in proprietary investments to prudent alternative investments; removal of Plan fiduciaries deemed to have breached their fiduciary duties, and imposition of a constructive trust as necessary for administration of some or all of the aforementioned remedies.

## COUNT III
Prohibited Transactions
29 U.S.C. § 1106

46.     Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

47.     At all relevant times, the Defendant acted as a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising authority and control with respect to the management of the Plan and the Plan's assets.

48.     The Defendant, by its actions and omissions in authorizing or causing the Plan to invest in the Jackson National Funds and purchase Jackson National affiliated products and services, including Jackson National Funds, and to pay, directly or indirectly, investment management and other fees in connection therewith, caused the Plan to engage in transactions that Defendant knew or should have known constituted sales or exchanges of property between the Plan and parties in interest, the furnishing of services by parties in interest to the Plan, and transactions with fiduciaries in violation of §§ 406(a)(1)(A), (C), and 406(b), 29 U.S.C. §§ 1106(a)(1)(A), (C), and 406(b).

49.     As a direct and proximate result of these prohibited transaction violations, the Plan, directly or indirectly, paid millions of dollars in investment management and other fees to the Defendant that were prohibited by ERISA and suffered millions of dollars in losses annually.

50.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), the Defendant is liable to restore all losses suffered by the Plan as a result of the prohibited transactions and all profits earned by the Defendant on the fees paid by the Plan to Defendant and its affiliates.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

A. Certify this action as a class action as stated here and appoint Plaintiff's counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23;

B. Designate Plaintiff as Class Representative and designate Plaintiff's counsel as Class Counsel;

C. Declare that Defendant breached its fiduciary duties to Plaintiff and the Class in the manner described in the Complaint;

D. Declare that Plan assets inured to the benefit of the Defendant in violation of 29 U.S.C. § 1103;

E. Order Defendant to personally make good to the Plan all losses that the Plan incurred as a result of the breaches of fiduciary duties and self-dealing described above and to restore the Plan to the position it would have been in but for such breaches and self-dealing;

F. Order Defendant to disgorge all revenues received from, or in respect of, the Plan;

G. An order granting equitable restitution and other appropriate equitable monetary relief against Defendant;

H. Enjoin Defendant from further violations of its fiduciary responsibilities, obligations, and duties;

I. Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan; removal of imprudent mutual funds as core investment options; transfer of Plan assets in imprudent mutual funds to prudent alternative investments; and removal of Plan fiduciaries deemed to have breached their fiduciary duties;

E. Award Plaintiff and the Class reasonable attorney's fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the Class;

F. Order Defendant to pay prejudgment interest; and

G. Award such other and further relief as the Court deems equitable and just.

DATED this 29 day of March, 2017.

By: /s/Joseph C. Pagano
  Joseph C. Pagano (P57107)
  Viviano, Pagano, & Howlet PLLC
  Mt. Clemens, Michigan 48043
  Telephone: (586) 569-1580
  Facsimile: (586) 469-1808
  Email: jpagano@vivianolaw.com

  Garrett W. Wotkyns*
  Michael McKay*
  John J. Nestico*
  SCHNEIDER WALLACE COTTRELL
  KONECKY WOTKYNS LLP
  8501 N. Scottsdale Road, Suite 270
  Scottsdale, Arizona  85253
  Telephone: (480) 428-0145
  Facsimile: (866) 505-8036
  Email: gwotkyns@schneiderwallace.com
  Email: mmckay@schneiderwallace.com
  Email: jnestico@schneiderwallace.com

  Todd D. Carpenter*
  CARLSON LYNCH SWEET
  KIPELA CARPENTER
  402 West Broadway, 29th Floor
  San Diego, California 92101
  Telephone: (619) 756-6994
  Facsimile: (619) 756-6991
  Email: tcarpenter@carlsonlynch.com

- 19 -

        Michael K. Yarnoff*
        KEHOE LAW FIRM
        1500 JFK Blvd., Suite 1020
        Philadelphia, Pennsylvania 19102
        Telephone: (215) 792-6676
        Facsimile: (215) 990-0701
        Email: myarnoff@kehoelawfirm.com

*Attorneys for Plaintiff*
*Pro Hac Vice application forthcoming